IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 13, 2024

## LANORRIS O'BRIEN CHAMBERS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**No. 83413    Barry R. Tidwell, Judge**

_____

### No. M2023-00929-CCA-R3-PC

_____

The Petitioner, LaNorris O'Brien Chambers, appeals from the Rutherford County Circuit Court's denial of his petition for post-conviction relief, wherein he challenged his convictions for two counts of robbery, two counts of fraudulent use of a credit card, and one count of aggravated assault. On appeal, the Petitioner argues trial counsel provided ineffective assistance in failing to challenge Count 5, in failing to request dismissal of Count 2 of the superseding indictment, in failing to explain Rule 404(b) and the effect of his prior convictions, in failing to challenge the sufficiency of the State's notice of sentence enhancement, and in failing to review all discovery with him. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Matthew J. Crigger (on appeal), Brentwood, Tennessee, and Halle Mann (appellate brief), Murfreesboro, Tennessee, for the appellant, LaNorris O'Brien Chambers.

Jonathan Skrmetti, Attorney General and Reporter; Christian N. Clase, Assistant Attorney General; Jennings H. Jones, District Attorney General; and John Zimmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On October 2, 2019, the Rutherford County Grand Jury indicted the Petitioner in case number 82166 for two counts of robbery (Counts 1 and 2), two counts of fraudulent use of a credit card (Counts 3 and 4), and one count of aggravated assault (Count 5).

On November 4, 2019, the State filed a Notice of Sentence Enhancement, listing the thirteen prior felony convictions the Petitioner had received in Florida and Alabama.

On June 9, 2020, the Rutherford County Grand Jury returned a superseding indictment, charging the Petitioner in case number 83413 with one count of robbery (Count 1), one count of aggravated robbery (Count 2), two counts of fraudulent use of a credit card (Counts 3 and 4), and one count of aggravated assault (Count 5).

On September 9, 2020, the Petitioner entered guilty pleas in case number 83413, the superseding indictment, to two counts of robbery (Counts 1 and 2), two counts of fraudulent use of a credit card (Counts 3 and 4), and one count of aggravated assault (Count 5) and agreed to be sentenced for the felony offenses as a Range III offender, with the trial court to determine the length of his sentences. Following a sentencing hearing, the trial court imposed an effective sentence of thirty years, entering judgments on December 8, 2020.[1]

Thereafter, on December 6, 2021, the Petitioner timely filed a pro se petition for post-conviction relief, alleging that trial counsel provided ineffective assistance of counsel, in part, by failing to challenge Count 5 and by inducing him to plead guilty rather than proceed to trial because of his criminal history. Following the trial court's appointment of counsel, the Petitioner filed an amended petition, which additionally alleged, in pertinent part, that trial counsel was ineffective in failing to "discuss Tenn. R. Evid. 404(b) and prior convictions' impact on trial" and in failing to "provide and review all discovery." After his first appointed counsel withdrew and new counsel was appointed, the Petitioner filed a second amended petition, alleging in part that trial counsel was ineffective in failing to challenge Count 2 and in failing to challenge the sufficiency of the State's Notice of Sentence Enhancement.

At the post-conviction hearing, trial counsel testified that he represented the Petitioner in 2019 and that although he was currently retired, he had practiced law for approximately thirty years. Trial counsel stated that he was very familiar with the requirements for a proper indictment, including Tennessee Code Annotated ("Code") section 40-13-202. He asserted that the language in Count 5 in both the original and superseding indictments was sufficient to properly apprise the Petitioner of the charged offense of aggravated assault because all the essential elements of the offense were present in Count 5 for both indictments. When asked if he thought there was anything wrong with Count 5 on either indictment, trial counsel replied that "[Count 5] could have been a little more detailed as to the place" where the crime occurred; however, he asserted that

---

[1] The post-conviction court entered corrected judgments in Counts 1 and 2 on June 1, 2023, nunc pro tunc to December 8, 2020.

information identifying "the deadly weapon, the motor vehicle, date, [and] individual [victim]" were present in Count 5 in both the original indictment and the superseding indictment.

Trial counsel said he knew the State elevated Count 2 from robbery in the original indictment to aggravated robbery in the superseding indictment. When asked why the State decided to do this, trial counsel said he "assume[d]" that after the State spoke with the victim in Count 2 about her injuries, it "determined that it was appropriate to go back and supersede the indictment[.]" However, trial counsel admitted that he did not "know" that was what happened. He added that initially the State provided limited discovery and that later, the State provided more complete discovery, but he was unsure whether he received this additional discovery before the State obtained the superseding indictment. Trial counsel said he was not aware of any new evidence that prompted the State to obtain the superseding indictment elevating Count 2 to aggravated robbery.

Trial counsel acknowledged that because of "a typo," the statute included in Count 2 of the superseding indictment referenced the crime of robbery; however, he said that "the facts [in Count 2 of the superseding indictment] charged aggravated robbery, not robbery." Trial counsel asserted that this typographical error was "[n]ot sufficient to nullify [Count 2 of the superseding indictment]." He also asserted that it would have been "a simple process" for the State to amend Code section 39-13-401 to Code section 39-13-402, which the trial court would have allowed because similar issues happened "all of the time."

Trial counsel stated that he reviewed the State's Notice of Sentence Enhancement that had been filed under the original indictment's case number and asserted that he was familiar with the requirements for such notices. He said that the notice of sentence enhancement's reference to "TCA 40-25-202" rather than "TCA 40-35-202" was a "typographical error" that would not have prevented the Petitioner from being put on notice that the State intended to enhance his sentence. In addition, trial counsel stated his belief that the incorrect statute did not make the notice misleading. He asserted that the prosecutor initially intended to try the Petitioner's case and "get the maximum" sentence he could and that the prosecutor believed the Petitioner was "a career criminal in regard to this case." Trial counsel asserted that the notice's failure to identify the actual range in which the State intended to sentence the Petitioner was not misleading because he had discussed the Petitioner's sentence range, if convicted at trial, with him "repeatedly." He did not recall the State's filing a new notice of sentence enhancement after the superseding indictment amended the charge in Count 2 from robbery to aggravated robbery; however, he believed that the State's previously filed notice was sufficient to place the Petitioner on notice about sentence enhancement for the superseding indictment as well. Trial counsel added that in his early years of practice, a different judge in an unrelated case informed him that the State had provided sufficient notice by filing a notice of sentence enhancement

after the original indictment but not after the superseding indictment. He said his discussions with the Petitioner included considerations regarding whether the Petitioner was convicted of aggravated robbery or robbery and how the Petitioner's prior convictions could affect his sentence.

Trial counsel asserted that he never told the Petitioner that he should plead guilty because he would be convicted at trial because of his prior convictions. Instead, trial counsel said he and the Petitioner "had conversations about his prior criminal record" and about how the Petitioner's criminal record might apply if he was convicted at trial. Trial counsel said he also talked to the Petitioner about the dangers of testifying at trial, given his criminal record. He also advised the Petitioner not to mention his criminal record and not to make statements that could "open the door" for the State to discuss his criminal record. Trial counsel said he recalled talking to the Petitioner about his prior convictions "at least" once, but "probably two" times, before the Petitioner entered his guilty pleas. He did not recall whether he reviewed Tennessee Rule of Evidence 404(b) with the Petitioner. Trial counsel acknowledged that he did not file a motion in limine to preclude entry of the Petitioner's former convictions at trial; however, he stated that if the Petitioner had proceeded to trial, he would have raised that issue.

Trial counsel agreed that it was his responsibility to explain to the Petitioner the elements of the charged offenses. He said he informed the Petitioner of the differences between aggravated robbery and robbery and the differences between aggravated assault and misdemeanor assault.

Trial counsel recalled his and the Petitioner's reviewing the "discovery on different occasions," but he could not remember if they discussed "all of the discovery." He could not remember if the Petitioner viewed the entire video of his police interview. Although trial counsel said the Petitioner initially asked to watch the entire video of his police interview, on a later occasion he believed the Petitioner "wasn't interested in watching it[,]" but he was not certain. Trial counsel said the reason he did not discuss the entire video with the Petitioner was that they were "talking more in contemplation of settlement negotiations."

On cross-examination, trial counsel stated that he spent most of his career working in the public defender's office where he had handled "[t]housands" of felony cases, including many that went to trial. He agreed that although the Petitioner's case was set for trial on October 12, 2020, the Petitioner entered his guilty pleas on September 9, 2020, which was over thirty days prior to his scheduled trial date. He added that although the Petitioner made an issue about the State's failure to file a notice of sentence enhancement after the superseding indictment, he believed this notice did not need to be filed until thirty days prior to trial, which would have been after the Petitioner's guilty pleas in this case.

Trial counsel also stated that motions in limine and Rule 404(b) motions were typically handled closer to the actual trial date.

Trial counsel stated that if the Petitioner had proceeded to trial and intended to testify, he would have encouraged the Petitioner to review the video of his post-arrest statement to police. He said that although he did not foresee the Petitioner testifying at trial, he and the Petitioner would have reviewed the video of his police interview to help guide him on how to cross-examine the State's witnesses when the State attempted to introduce the video of his interview.

Trial counsel asserted that the Petitioner "never" proposed an affirmative defense or a legal justification for the charged conduct. He said the Petitioner never indicated that he had an alibi witness or that he was not present at the crime scenes. He also said that the Petitioner never disputed any of the prior convictions listed in the State's notice of sentence enhancement.

Trial counsel stated that whenever he and the Petitioner spoke, it was "more along the lines of . . . finding a resolution to the cases." Consequently, trial counsel pursued a plea agreement for the Petitioner on "[m]ultiple occasions." He believed that the evidence against the Petitioner was "overwhelming" and that the Petitioner would be convicted of at least robbery on both cases, but probably aggravated robbery in Count 2. He noted that the two victims in this case were a professional educator and an elderly lady who was robbed as she was going to a doctor's office. He said the husband of the elderly victim testified at the Petitioner's sentencing hearing and went into detail about how the robbery had impacted her, which seemed to "move[] the [c]ourt quite a bit." Trial counsel stated that if he had not obtained a plea agreement, the Petitioner would not have had a defense at trial, so the best strategy was "trying to mitigate from aggravated robbery down to a robbery." He noted that the Petitioner had used the Petitioner's rewards card and the victim's stolen credit card at a sporting goods store, which was how the police were able to connect that robbery back to him.

In addition, the Petitioner's girlfriend used her employee card, along with the victim's stolen credit card, and the Petitioner was driving around in a vehicle that had stolen items in it, which also connected the robberies back to the Petitioner. Trial counsel stressed that the Petitioner "needed to find a settlement resolution and not go to trial" in this case because "[t]he evidence against him was too strong." He noted that the Petitioner ultimately pled guilty "to two robberies," rather than a robbery and an aggravated robbery, and that the Petitioner received a Range III sentence with a release eligibility of forty-five percent, rather than being sentenced as a career criminal, which had a release eligibility of eighty-five percent. Trial counsel said that although he believed the trial court would sentence the Petitioner to something in the twenty-year range, the court ultimately

sentenced him to the maximum sentence of fifteen years for each of the robbery convictions and ordered these sentences served consecutively, for an effective thirty-year sentence.

The Petitioner also testified at the post-conviction hearing. He asserted that the language in Count 5 of the superseding indictment was insufficient to charge him with aggravated assault because it failed to track the language of Code section 39-13-102. Specifically, he claimed that the words "threaten to cause bodily injury" when used alone did not "import violence" and therefore did not charge the offense of aggravated assault. The Petitioner asserted that although Count 2 alleged that the victim had suffered serious bodily injury, there was no evidence disclosed in discovery and there was no new evidence indicating that this victim had suffered serious bodily injury.

The Petitioner also argued that the State's notice of sentence enhancement was insufficient because it did not inform him whether the State intended to sentence him as a standard, multiple, persistent, or career offender. He also asserted that the State never filed a new notice of sentence enhancement after it obtained the superseding indictment. The Petitioner said that trial counsel never talked to him about not opening the door to the State's introducing his prior convictions. He claimed that after the State obtained the superseding indictment, "it was all about the plea" He said trial counsel never discussed the elements of the offenses with which he was charged.

The Petitioner stated that the "only video" he saw was "the video of the victim, Hylania Thom[]son, in the hospital bed." He later said he asked trial counsel to review his "post[-]arrest video interview" and that trial counsel "showed [him] the video," but the Petitioner could not recall if he saw the "whole, full video." The Petitioner claimed trial counsel withheld "[a]ll discovery dealing with the facts and the law" related to his charges but "[n]ot so much the video."

During the State's cross-examination, the Petitioner acknowledged that trial counsel showed him the video of the victim in the hospital bed from the news report. He claimed trial counsel never told him that the reason the police charged him was that he had used his rewards card and the victim's stolen credit card at Dick's Sporting Goods. When he was asked if the police, just by luck, came to his apartment the day he was leaving with some of the stolen items in his car, the Petitioner said, "It wasn't hard to put two and two together, sir." The Petitioner also denied ever seeing his post-arrest interview video and claimed that trial counsel never explained anything to him about his case. Significantly, the Petitioner never testified at the post-conviction hearing that but for trial counsel's errors, he would have not have entered his guilty pleas and would have proceeded to trial.

Following this hearing, the post-conviction court entered an order denying the Petitioner post-conviction relief. In this order, the post-conviction court made the

following findings of fact regarding the Petitioner's claim that trial counsel failed to challenge Count 5:

> The [c]ourt credits the testimony of [trial counsel], and not [the Petitioner], that [trial counsel] did not find Count 5 of the indictments to be deficient and that he explained the nature of this charge to the Petitioner. The Petitioner did not present any evidence to rebut this testimony.

The post-conviction court also made the following findings regarding the Petitioner's claim that trial counsel failed to move to dismiss Count 2:

> Trial counsel has no control over whether a superseding indictment will be obtained for any count. Irrespective of that fact, the [c]ourt credits [trial counsel]'s testimony that he did not find issue with the indictment as to Count 2 and moved forward with plea negotiations. The Petitioner has not shown any evidence that [trial counsel] was in fact unprepared for his case and unable to properly advise him[,] other than merely alleging it by implication.

Regarding the Petitioner's claim that trial counsel misled or induced the Petitioner to plead guilty and failed to explain Tenn. R. Evid. 404(b) and the use of his prior convictions at trial, the post-conviction court made the following findings and conclusions:

> The [c]ourt credits [trial counsel]'s testimony that he told the Petitioner a plea bargain would be in his best interest given the strength of the evidence in discovery and not, as the Petitioner alleges, because he would be convicted again for having many prior convictions. The [c]ourt does not find the testimony of the Petitioner credible that [trial counsel] misstated the law to him to induce his plea. The Petitioner has not overcome the presumption that trial counsel "provided adequate assistance and used reasonable professional judgment." See Kendrick, 454 S.W.3d at 458.

As to the Petitioner's claim that trial counsel failed to challenge the sufficiency of the State's Notice of Sentence Enhancement, the post-conviction court made the following finding:

> The [c]ourt credits the testimony of [trial counsel] that he did not believe the language of the State's Notice of [Sentence] Enhancement and any typographical errors made the document misleading or constitutionally deficient for notice purposes such that he could not negotiate a plea and proceed with the case.

The post-conviction court then made the following additional findings regarding this issue:

> The Petitioner testified [at the post-conviction hearing] that the Notice of [Sentence] Enhancement did not sufficiently apprise him of the State's intention to give him an enhanced sentence. The [c]ourt does not find this credible.
>
> The [c]ourt credits the testimony of [trial counsel] that he "repeatedly" discussed with the Petitioner his possible sentence range and that he was on notice from the State's original Notice of [Sentence] Enhancement that the Petitioner was a Career Offender based on his prior convictions. . . . The Petitioner did not present any evidence to rebut this testimony. In the Negotiated Plea Agreement, the Petitioner affirmed via signature that he understood "the range of punishment for the offense(s) for which [he was charged]." At the plea colloquy, the [trial] court also asked the Petitioner whether he understood the range of punishment possible in his case and the Petitioner affirmed that he did. Therefore, the [c]ourt does not find the testimony of the Petitioner credible that [trial counsel] never explained the differences between the ranges for offenders of what "persistent" versus "career" offender meant.

Regarding the Petitioner's claim that that trial counsel was ineffective in failing to review all discovery with him, including the video of his police interview, the post-conviction court made the following findings and conclusions:

> At the [post-conviction] hearing, the Petitioner conceded that he may have seen some of [his] interview [with police] but that his main concern was not having a discussion about discovery related to his charges.
>
> The [c]ourt credits [trial counsel]'s testimony that he went over some discovery with the Petitioner but that he did not recall if he reviewed with the Petitioner the video of the police interview. The Petitioner did not present any evidence to rebut this testimony. The Petitioner has not shown what specific evidence [trial counsel] neglected to show him before he pled guilty.

Finally, as to all of these claims, the post-conviction court concluded that the Petitioner had not met his burden of showing that trial counsel's performance fell below an "objective standard of reasonableness" or was "outside the range of competence demanded of attorneys in criminal cases." In addition, the post-conviction court concluded

- 8 -

that the Petitioner had failed to show that "but for th[ese] alleged error[s], he would not have pleaded guilty in this case."

Following entry of this order, the Petitioner timely filed a notice of appeal.

## ANALYSIS

The Petitioner argues that trial counsel provided ineffective assistance. Specifically, he claims trial counsel was ineffective in failing to challenge Count 5 of the indictment, in failing to challenge Count 2 of the indictment, in failing to explain Tennessee Rule of Evidence 404(b) and the use of his prior convictions at trial, in failing to challenge the State's notice of sentence enhancement, and in failing to review all discovery with him. The State asserts that the Petitioner has failed to show that trial counsel was deficient as to any of these issues or that but for these alleged errors, the Petitioner would have proceeded to trial or would have received a more favorable sentence. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103. A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Id. § 40-30-110(f); see Tenn. Sup. Ct. R. 28, § 8(D)(1); Nesbit v. State, 452 S.W.3d 779, 786 (Tenn. 2014). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

This court reviews "a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." Whitehead v. State, 402 S.W.3d 615, 621 (Tenn. 2013) (citing Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Calvert v. State, 342 S.W.3d 477, 485 (Tenn. 2011)). Ineffective assistance of counsel claims are treated as mixed questions of law and fact. Grindstaff, 297 S.W.3d at 216. A post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. Calvert, 342 S.W.3d at 485 (citing Grindstaff, 297 S.W.3d at 216; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)). "Accordingly, we generally defer to a post-conviction court's findings with respect to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." Mobley v. State, 397 S.W.3d 70, 80 (Tenn. 2013) (citing Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999)). However, we review a post-conviction court's application of the law to its factual findings de novo without a presumption of correctness. Id.

- 9 -

The right to effective assistance of counsel is protected by both the United States Constitution and the Tennessee Constitution. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) this deficiency prejudiced the defense. Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). However, to establish prejudice in the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the petitioner would not have entered his guilty plea and would have proceeded to trial. Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad, 938 S.W.2d at 370.

In assessing an attorney's performance, we "must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462 (citing Strickland, 466 U.S. at 689). In addition, we must avoid the "distorting effects of hindsight" and must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Id. at 688-89. However, "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

**A. Count 5.** First, the Petitioner contends that trial counsel was ineffective in failing to challenge Count 5 in the original and superseding indictments. He asserts that the language in Count 5 was insufficient to inform him that he was being charged with aggravated assault because it "fail[ed] to sufficiently track" Code section 39-13-102. In particular, he claims the words "threaten" or "threatening" do not appear in Code section 39-13-102 or Code section 39-13-101. He also claims the phrase "threaten to cause bodily injury" used in Count 5 does "not import violence and when used alone in an indictment

- 10 -

does not charge aggravated assault." Ultimately, the Petitioner argues that if trial counsel had challenged Count 5, there "is a likelihood" he would not have entered his guilty pleas.

Count 5 in both the original and superseding indictments states that the Petitioner "did unlawfully and knowingly threaten to cause bodily injury to Hylania Thompson, by use or display of a deadly weapon, to wit: motor vehicle, in violation of T.C.A. [§] 39-13-102 . . . ."

To sustain a conviction for aggravated assault as charged in this case, the State had to prove beyond a reasonable doubt that the Petitioner intentionally or knowingly caused the victim to reasonably fear imminent bodily injury by the use or display of a deadly weapon. See Tenn. Code Ann. §§ 39-13-102(a)(1)(A)(iii) (Supp. 2018), -101(a)(2) (Supp. 2018).

The Tennessee Supreme Court has stated that an indictment is valid if it contains sufficient information (1) to enable the defendant to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the defendant against double jeopardy. State v. Hammonds, 30 S.W.3d 294, 299 (Tenn. 2000) (citing State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997)). Moreover, pursuant to Tennessee Code Annotated section 40-13-202, the indictment must

> state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner so as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment.

Tenn. Code Ann. § 40-13-202; see Hammonds, 30 S.W.3d at 300 (stating that "indictments which achieve the overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements"). An indictment must contain all the essential elements of the charged offense. VanArsdall v. State, 919 S.W.2d 626, 630 (Tenn. Crim. App. 1995) (citing State v. Morgan, 598 S.W.2d 796, 797 (Tenn. Crim. App. 1979)).

At the post-conviction hearing, trial counsel testified that he believed Count 5 sufficiently charged the offense of aggravated assault. Although trial counsel noted that Count 5 "could have been a little more detailed as to the place" where the crime occurred, he nevertheless asserted that Count 5 correctly identified "the deadly weapon," which was "the motor vehicle," as well as the "date, [and] individual" victim. Trial counsel also stated that he reviewed Count 5 and its elements with the Petitioner. On the other hand, the Petitioner testified that Count 5 was insufficient because it failed to track Code section 39-

- 11 -

13-102 and because the words "threaten to cause bodily injury" when used alone did not "import violence" sufficient to charge the offense of aggravated assault. In its order denying relief, the post-conviction court specifically credited trial counsel's testimony over the Petitioner's testimony regarding the sufficiency of Count 5.

We conclude that trial counsel was not deficient in failing to challenge Count 5. That count clearly identified that the Petitioner intentionally or knowingly caused the victim to reasonably fear imminent bodily injury and that the act involved the use or display of a deadly weapon, which are the essential elements of the offense of aggravated assault. See Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii), -101(a)(2); see also 7 Tenn. Prac. Pattern Jury Instr. T.P.I.—Crim. 6.02.

Here, the Petitioner seems to argue that Count 5, which stated that the Petitioner "threaten[ed] to cause bodily injury," was insufficient to charge that the Petitioner "[i]ntentionally or knowingly cause[d] another to reasonable fear imminent bodily injury." Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii), -101(a)(2). Black's Law Dictionary defines "threat" as "[a] communicated intent to inflict harm or loss on another or on another's property . . . ." Black's Law Dictionary (11th ed. 2019). We conclude that the language in Count 5 was adequate "to enable a person of common understanding to know what is intended." Tenn. Code Ann. § 40-13-202; see VanArsdall, 919 S.W.2d at 630 (reiterating that the indictment must define the offense "so as to afford persons of ordinary intelligence fair notice of what conduct is prohibited"). In addition, the Tennessee Supreme Court has held, "[S]pecific reference to a statute within the indictment may be sufficient to place the accused on notice of the charged offense." State v. Sledge, 15 S.W.3d 93, 95 (Tenn. 2000) (citing State v. Carter, 988 S.W.2d 145, 149 (Tenn. 1999); Ruff v. State, 978 S.W.2d 95 (Tenn. 1998)). Count 5 clearly referenced the relevant statute for aggravated assault, Code section 39-13-102. Because Count 5 sufficiently placed the Petitioner on notice that he was charged with aggravated assault, we conclude trial counsel was not deficient in failing to challenge this count.

We also conclude that the Petitioner has failed to show he was prejudiced by trial counsel's alleged error. The Petitioner offered no proof at the post-conviction hearing explaining why he would not have entered his guilty plea if the trial counsel challenged Count 5. Trial counsel testified that the evidence against the Petitioner was "overwhelming" and that the Petitioner never proposed a defense for the charged conduct and never indicated he had an alibi witness. Trial counsel also stated that the Petitioner wanted to resolve his cases, which was why trial counsel sought a plea agreement for the Petitioner on "multiple occasions." Because the Petitioner cannot show a reasonable probability that, but for trial counsel's failure to challenge Count 5, he would not have pleaded guilty and would have proceeded to trial, he has failed to establish prejudice. Accordingly, the Petitioner is not entitled to relief on this issue.

**B. Count 2.** Next, the Petitioner argues that trial counsel was ineffective in failing to move to dismiss Count 2 of the superseding indictment. He claims Count 2 is "insufficient to charge aggravated robbery" because it references Code section 39-13-401, the robbery statute, rather than Code section 39-13-402, the aggravated robbery statute. The Petitioner also asserts that Count 2 "was superseded from robbery to aggravated robbery with no probable cause, no additional discovery, no new medical evidence to support the victim suffered a serious bodily injury, and seemingly no new additional statements from the witness or victim." He claims that if trial counsel had challenged Count 2 for these reasons, he would not have entered his guilty plea.

Count 2 of the superseding indictment states that the Petitioner "did unlawfully and knowingly[] take property, to wit: a purse and contents, from Hylania Thompson by violence or putting said Hylania Thomson in fear, and did thereby cause her to suffer serious bodily injury in violation of T.C.A. § 39-13-401 . . . ."

We conclude that trial counsel was not deficient in failing to challenge Count 2 for insufficiency. Trial counsel testified that although a "typo" in Count 2 referenced Code section 39-13-401, the robbery statute, rather than Code section 39-13-402, the aggravated robbery statute, the allegations in Count 2 clearly charged aggravated robbery. Trial counsel also asserted that the typographical error in Count 2 was not sufficient to nullify Count 2 and that the State could simply have amended Code section 39-13-401 to 39-13-402, which the trial court would have allowed because similar issues happened "all of the time." The Petitioner's testimony at the post-conviction hearing was limited to his claim that there was no discovery and no new evidence showing that the victim had suffered serious bodily injury. In denying relief, the post-conviction court accredited trial counsel's testimony that Count 2 was sufficient to charge aggravated robbery and then held that trial counsel had no control over whether the State would obtain a superseding indictment.

Here, Count 2 charges the Petitioner with knowingly taking property from the victim by violence or by putting the victim in fear where the victim suffered serious bodily injury. See Tenn. Code Ann. § 39-13-402, -401; see also 7 Tenn. Prac. Pattern Jury Instr. T.P.I.—Crim. 9.02. Because Count 2 tracks the language of the aggravated robbery statute, it "adequately" charges the offense. See VanArsdall, 919 S.W.2d at 630 (citing Patty v. State, 556 S.W.2d 776, 780 (Tenn. Crim. App. 1977)). Moreover, it is well-established that where there is a clerical error regarding the statute referenced in the indictment, the trial court may treat the incorrect statute as surplusage and can try the defendant under the proper statute. See McCracken v. State, 489 S.W.2d 48, 51 (Tenn. Crim. App. 1972); Lewis v. Taylor, No. E2013-02492-CCA-R3-HC, 2014 WL 1920619, at *3 (Tenn. Crim. App. May 13, 2014) ("[A]n indictment's reference to an incorrect statute is mere surplusage and does not render the indictment fatally defective.").

- 13 -

We also conclude that trial counsel was not deficient in failing to challenge the fact that Count 2 elevated the offense of robbery to aggravated robbery. We recognize that the State has broad discretion to pursue a superseding indictment. State v. Harris, 33 S.W.3d 767, 771 (Tenn. 2000). "Although the State may not bring a superseding indictment to harass or intimidate the accused, a legitimate decision to bring a superseding indictment is uniquely within the State's authority." Id. (footnote omitted). At the post-conviction hearing, trial counsel testified that he "assum[ed]" that the State obtained the superseding indictment after speaking with the victim about her injuries. He noted that Hylania Thompson, the victim in Count 2, was an elderly woman who was robbed by the Petitioner as she was going to a doctor's appointment. He also recognized that Ms. Thompson's husband testified at the Petitioner's sentencing hearing about how the robbery had impacted her, which seemed to move the court. While the Petitioner claimed there was no evidence that Hylania Thompson suffered serious bodily injury, he failed to present any proof to substantiate this claim. In denying relief, the post-conviction court found that trial counsel did not have any control over whether the State would obtain a superseding indictment; the court then credited trial counsel's testimony that he believed Count 2 was sufficient, which was why trial counsel moved forward with plea negotiations. For these reasons, we conclude that the Petitioner has failed to establish that trial counsel performed deficiently as to Count 2.

Moreover, we conclude that the Petitioner has failed to show he was prejudiced by any alleged error regarding Count 2. Although the Petitioner claims that he would not have entered his guilty plea if trial counsel had challenged Count 2, he failed to offer any proof on this point at the post-conviction hearing. The record shows that even if trial counsel had somehow successfully challenged Count 2 in the superseding indictment and then proceeded under Count 2 charging robbery in the original indictment, the record shows that the Petitioner still would have entered his guilty plea. Trial counsel testified that there was "overwhelming" evidence of the Petitioner's guilt, that the Petitioner had offered no defense for these charges, and that the Petitioner had repeatedly expressed his desire to resolve his cases. Because the Petitioner has not shown a reasonable probability that, but for trial counsel's failure to challenge Count 2 in the superseding indictment, he would not have entered his guilty plea and would have proceeded to trial, he has failed to establish prejudice. The Petitioner is not entitled to relief on this issue.

**C. Rule 404(b).** Next, the Petitioner asserts that trial counsel erred in failing to explain Tennessee Rule of Evidence 404(b) and the use of his prior convictions at trial. He claims that if trial counsel had not told him he would be convicted at trial based on his prior convictions, he would not have entered his guilty pleas.

- 14 -

Rule 404(b) prohibits the use of a defendant's prior convictions "to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). At the post-conviction hearing, trial counsel testified that he never informed the Petitioner that he should plead guilty because the jury would convict him at trial because of his prior convictions. Instead, trial counsel stated that he talked to the Petitioner about his prior record and how his record might affect his sentence, if the Petitioner was convicted at trial. Trial counsel also said he talked to the Petitioner about "the dangers" of testifying at trial, given his criminal record, and emphasized that the Petitioner should not bring up his record or make statements that could open the door for the State to discuss his criminal record. While trial counsel did not recall talking to the Petitioner about Rule 404(b) and acknowledged that he did not file a motion in limine to preclude admission of the Petitioner's prior convictions at trial, he asserted that the Petitioner entered his guilty pleas more than thirty days prior to the trial date and that he typically handled motions in limine and Rule 404(b) motions closer to a defendant's actual trial date. Although the Petitioner testified that trial counsel never talked to him about not opening the door to the State's introduction of his prior convictions, trial counsel asserted that he talked to the Petitioner about this issue at length. Ultimately, the post-conviction court accredited trial counsel's testimony on this point and found that the Petitioner's testimony that trial counsel had misstated the law to induce his plea was not credible. We are bound by the post-conviction court's credibility findings. Mobley, 397 S.W.3d at 80 (citing Momon, 18 S.W.3d at 156). Accordingly, we conclude that trial counsel was not deficient as to this issue.

We also conclude that the Petitioner has failed to establish prejudice regarding this issue. Other than his own discredited testimony, the Petitioner failed to present any proof at the post-conviction hearing showing that but for trial counsel's advice regarding his criminal record, he would not have entered his guilty plea. The record shows that the proof of the Petitioner's guilt was overwhelming, that the Petitioner had no defenses, that the Petitioner sought to resolve his charges, and that the Petitioner's best strategy was to plead guilty to robbery, rather than face the risk of being convicted of aggravated robbery at trial. Because the Petitioner has failed to show a reasonable probability that but for trial counsel's alleged errors in failing to explain Rule 404(b) and the use of his prior convictions at trial, he would not have entered his guilty plea and would have proceeded to trial. Therefore, he is not entitled to relief on this issue.

**D. Notice of Sentence Enhancement.** In addition, the Petitioner contends that trial counsel was ineffective in failing to challenge the sufficiency of the State's Notice of Sentence Enhancement. He asserts that the State's notice incorrectly referenced Code section 40-25-202, rather than Code section 40-35-202; that the notice failed to identify whether the State was seeking enhanced punishment for him as a multiple, persistent, or career offender; that the notice provided incorrect dates for offenses; and that the State

failed to refile the notice of sentence enhancement after obtaining the superseding indictment. The Petitioner claims that there is a reasonable probability that but for trial counsel's failure to challenge the Notice of Sentence Enhancement for one of the above reasons, he would have been sentenced as a Range I offender at sentencing.

The district attorney has the discretion to seek enhanced sentencing of a defendant. State v. Adams, 788 S.W.2d 557, 559 (Tenn. 1990). The notice requirement for sentencing enhancement provides:

> If the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea; provided, that notice may be waived by the defendant in writing with the consent of the district attorney general and the court accepting the plea. Such statement, which shall not be made known to the jury determining the guilt or innocence of the defendant on the primary offense, must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions. . . .

Tenn. Code Ann. § 40-35-202(a). If the State fails to comply with this pretrial filing deadline, then the defendant may request a reasonable continuance of trial. Tenn. R. Crim. P. 12.3(a) ("[T]he district attorney general shall file notice of this intention [to seek an enhanced punishment] not less than ten (10) days before trial" and "[i]f the notice is untimely, the trial judge shall grant the defendant, on motion, a reasonable continuance of the trial.").

The purpose of this notice requirement is to "(a) provide fair notice to an accused that he/she is exposed to other than standard sentencing, (b) to facilitate plea bargaining, (c) to enable the accused to make an informed decision before entering a guilty plea, and (d) to a certain extent, to aid in trial strategy." State v. Livingston, 197 S.W.3d 710, 712 (Tenn. 2006) (citing Adams, 788 S.W.2d at 559; State v. Taylor, 63 S.W.3d 400, 412 (Tenn. Crim. App. 2001)). Significantly, an accused is entitled to "fair" notice, not "perfect" notice, of sentence enhancement. Id. at 712-13. If the State substantially complies with the notice requirement, then the burden shifts to the defendant to inquire about any ambiguities in the notice and to show that any issues with the notice prejudiced the defendant. State v. Williams, 558 S.W.3d 633, 640 (Tenn. 2018). However, if the notice is so defective that it amounts to no notice at all, then the State has not met its burden, and the defendant does not have to establish prejudice. Id. (citing Adams, 788 S.W.2d at 559).

- 16 -

In this case, the State filed a Notice of Sentence Enhancement on November 4, 2019. It provided that the State was giving "notice to the [Petitioner] pursuant to the provisions of TCA § 40-25-202 of its intent to enhance to an additional Range of any sentence[] imposed in this cause based upon the following convictions." The notice then listed the Petitioner's convictions and the convicting courts.

First, the Petitioner contends that trial counsel was deficient in failing to challenge the notice of sentence enhancement on the basis that the notice cited the wrong statute. At the post-conviction hearing, trial counsel testified that the notice of sentence enhancement's reference to Code section 40-25-202 rather than 40-35-202 was a "typographical error" that would not have prevented the Petitioner from being put on notice that the State intended to enhance his sentence. He also stated his belief that the incorrect statute did not make the notice misleading. In denying relief, the post-conviction court credited trial counsel's testimony that any typographical errors in the notice did not make it misleading or constitutionally deficient, such that he could not negotiate a plea deal for the Petitioner and proceed with the case. It is well established that clerical errors do not typically invalidate a notice of sentence enhancement. See Livingston, 197 S.W.3d at 712-13 (requiring "fair," not "perfect[,]" notice of sentencing enhancement); see also McCracken, 489 S.W.2d at 51; Lewis, 2014 WL 1920619, at *3; State v. Wright, No. M2010-02096-CCA-R3-CD, 2012 WL 601332, at *17-18 (Tenn. Crim. App. Feb. 23, 2012) (concluding that several clerical errors, including the failure to distinguish between misdemeanors and felonies, the inclusion of an incorrect conviction date, the failure to identify the correct court for two convictions, and the omission of a conviction, did not render notice in the notice of sentence enhancement "materially misleading").

Second, the Petitioner asserts that trial counsel was deficient in failing to specify whether the State intended to sentence him as a multiple, persistent, or career offender. Trial counsel testified that he knew the State intended to sentence the Petitioner as "a career criminal" and that the notice's failure to identify the actual sentencing range was not misleading because he had "repeatedly" talked to the Petitioner about his sentence range if convicted of any of the charged offenses at trial. In denying relief, the post-conviction court credited trial counsel's testimony that he discussed with the Petitioner his possible sentencing range and that he believed the original notice of sentence enhancement was sufficient to inform the Petitioner that he was a career offender based on his previous convictions. The post-conviction court also found that the Petitioner's testimony on this point was not credible and that the Petitioner failed to present any evidence to support his claim, given that both the Petitioner's guilty plea colloquy and plea agreement showed that the Petitioner understood his possible range of punishment in this case. A notice of sentencing enhancement does not have to specify the particular sentencing range that the State intends to pursue. See Livingston, 197 S.W.3d at 713-14 (reiterating that Code section 40-35-202(a) "requires, at a minimum, that the State file: (1) written notice, (2)

clearly expressing the State's intention to seek sentencing outside of the standard offender range, (3) setting forth the nature of the prior felony conviction, the dates of the convictions, and the identity of the courts of the convictions" (footnote omitted)); see also Taylor, 63 S.W.3d at 413 (holding that a notice of sentence enhancement is not required to specify which range—career, persistent, or multiple—applies to the defendant); Adams, 788 S.W.2d at 559 (stating that the purpose of Code section 40-35-202(a) is to provide reasonable notice to the accused "that he is exposed to other than standard sentencing").

Third, the Petitioner argues that trial counsel was deficient in failing to challenge the notice on the basis that the offense dates were listed incorrectly in the notice. However, Code section 40-35-202(a) only requires that the notice state the nature of the prior felony convictions, the dates of the convictions, and the courts in which these convictions occurred. In any case, because the Petitioner failed to offer any proof showing how his offense dates on the notice were incorrect, he has failed to show that trial counsel was deficient on this basis.

Fourth, the Petitioner maintains that trial counsel was deficient in not challenging the State's failure to file a second notice of sentence enhancement after obtaining the superseding indictment that charged the Petitioner with the more severe charge of aggravated robbery. At the post-conviction hearing, trial counsel testified that he believed the Petitioner was on notice of the sentencing enhancement for his aggravated robbery charge in the superseding indictment based on the State's first notice of sentence enhancement following the original indictment. Trial counsel said that, early in his career, another judge in an unrelated case had informed him that the State's notice under similar circumstances was sufficient. Moreover, trial counsel testified that the Petitioner entered his guilty plea on September 9, 2020, which was over thirty days prior to his scheduled trial date, and that although the Petitioner had made an issue of the State's failure to file a second notice after the superseding indictment, this second notice was not required to be filed prior to the date the Petitioner entered his guilty pleas in this case. In denying relief, the post-conviction court concluded that trial counsel was not deficient in determining that the State's notice of sentence enhancement was sufficient to place the Petitioner on notice that he would be subjected to enhanced sentencing. The law supports the post-conviction court's conclusion. See Livingston, 197 S.W.3d at 715-16 (concluding that "[a]lthough the language in count two of the second indictment elevated the statutory penalty into a higher class by the additional element that the defendant created a risk of death or injury to innocent bystanders or other third parties, we do not find this fact fatal to the finding of notice" because "the defendant had fair warning that the State intended to seek enhanced punishment for this crime, accomplishing the purposes of Tennessee Code Annotated section 40-35-202(a)"); cf. State v. Carter, 121 S.W.3d 579, 586 (Tenn. 2003) (concluding that the defendant was not given sufficient notice of the State's intent to seek an enhanced sentence on the charge of conspiracy to sell cocaine where the original indictment, which

had a notice of enhanced punishment but did not include the conspiracy charge, was dismissed, and the second indictment, which included the conspiracy charge, was not accompanied by a notice of enhanced punishment and the second indictment was not a re-indictment for the same offense). For all these reasons, the Petitioner has failed to show that trial counsel's failure to challenge the notice of sentencing enhancement was deficient.

We likewise conclude that the Petitioner has failed to show that any alleged error regarding the notice of sentence enhancement caused him prejudice. He claims that but for trial counsel's failure to challenge the notice of sentence enhancement, he would have received a lesser sentence as a Range I offender. We reiterate that even if trial counsel had challenged the notice of sentence enhancement for any of the above reasons, the Petitioner would not have received relief and, therefore, would not have been sentenced as a Range I offender. Because the Petitioner has failed to show a reasonable probability that, but for trial counsel's performance regarding the notice, he would not have entered his guilty plea, he has failed to establish prejudice. Accordingly, the Petitioner is not entitled to relief on this issue.

**E. Discovery.** Lastly, the Petitioner contends that trial counsel was ineffective in failing to review all discovery with him. He asserts that because his case took place during the COVID-19 pandemic, he and trial counsel were not able to have enough time to review all of the discovery in his case. The Petitioner claims that if trial counsel had reviewed the discovery with him, there "is a likelihood" that he would not have entered his guilty pleas.

The Petitioner has failed to show that trial counsel's performance was deficient with regard to this issue. Trial counsel testified that he and the Petitioner reviewed the discovery in this case several times. He said that while the Petitioner initially asked to watch the entire video of his police interview, he recalled that the Petitioner later said he "wasn't interested in watching it." Trial counsel said he did not discuss the entire interview video with the Petitioner because they focused more on "settlement negotiations" in light of the "overwhelming" evidence against the Petitioner. Although the Petitioner initially testified that the "only video" he saw was "the video of the victim, Hylania Thompson, in the hospital bed," the Petitioner later admitted that trial counsel showed him the video of his police interview, although he could not recall if he saw the "whole, full video." In denying relief, the post-conviction court found that the Petitioner failed to identify the specific discovery trial counsel failed to show him prior to the Petitioner's entering his guilty pleas. Because the Petitioner has not identified the specific discovery trial counsel failed to show him or the significance of this non-disclosed discovery, the Petitioner has failed to show how trial counsel's performance on this issue was deficient.

The Petitioner has also failed to show how trial counsel's alleged errors regarding discovery prejudiced him. He claims that if trial counsel had reviewed all discovery with

him, there "is a likelihood" that he would not have entered his guilty pleas. However, at the post-conviction hearing, the Petitioner never explained why he would not have entered his guilty pleas if he had been shown all the discovery in his case. Again, the record shows that the proof of the Petitioner's guilt was overwhelming, that he had no defenses, that he wanted to resolve his charges with a plea agreement, and that his best strategy was to plead guilty to robbery, rather than face the risk of being convicted of aggravated robbery at trial. The Petitioner has failed to show there is a reasonable probability that, but for trial counsel's failure to review all discovery with him, he would not have entered his guilty pleas and would have proceeded to trial. Because the Petitioner has failed to show that trial counsel rendered ineffective assistance, the Petitioner is not entitled to relief.

## CONCLUSION

The judgment of the post-conviction court is affirmed.

_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE

- 20 -